RABB v. FLENNIKEN.

1. A tract of land was settled by deed in 1867 upon a trustee in trust for the sole, separate, and exclusive use of his wife for life, with remainder to such of her issue as might be living at her death, with power to the trustee to make changes of investment of the trust property on the written request of the wife, and to hold such substituted property subject to the same trusts. Upon such written request, the trustee in 1877 sold the land so settled, receiving in payment a debt due by himself individually to the purchaser, family supplies, and some cash. In action instituted by the wife in 1884 against this purchaser and the

trustee, *held*, that a sale other than for reinvestment was a breach of trust, and as the purchaser knew of this breach of trust, the sale to him was void.

2. The contingent remaindermen having been joined as parties plaintiffs to this action, *held*, that they were prematurely before the court.

Before WALLACE, J., Fairfield, September, 1887.

This was an action by Cassandra H. Rabb and her three children against David R. Flenniken and Thomas W. Rabb, commenced July 23, 1884, to declare a tract of land in the possession of Flenniken under a deed made to him by T. W. Rabb, trustee, on February 20, 1877, charged with certain trusts, and to recover rents and profits. This tract of land had been conveyed to Thomas W. Rabb by Mary R. Holley on December 18, 1867, upon trusts declared in said deed as follows:

"*In trust, nevertheless*, and for the sole, separate. and exclusive use, benefit, and behoof of my aunt, Cassandra H. Rabb, wife of the above named Thomas W. Rabb, for and during the term of her natural life, not subject to the debts, contracts, or liabilities of her present or future husband which she may hereafter marry, and at and after her death then in trust to deliver the same to such issue as she may have living at the time of her death, to be held by them absolutely and discharged from all other trust. It is further provided that the said trustee is hereby fully authorized and empowered to make any and all such changes of investment of the said trust estate for the benefit of said estate as he may think proper, after first procuring the consent in writing of my aunt, Cassandra H. Rabb, to such change or changes, and to hold such property subject to the same trust as hereinbefore provided," &c.

The deed of conveyance from Rabb, trustee, to Flenniken recited the power in the foregoing deed, and upon it was written a consent to the conveyance signed by Cassandra H. Rabb. The consideration paid by Flenniken was $1,648, of which $625 was deducted for a debt due by T. W. Rabb, individually, to Flenniken, and the remainder was put to the credit of T. W. Rabb on Flenniken's books, which credit was subsequently extinguished by T. W. Rabb in purchases of goods and in cash receipts, the latter amounting to nearly $500.

*Mr. G. W. Ragsdale*, for appellants.

The defendant, Flenniken, having participated in the breach of trust and been benefited thereby, he cannot hold the property. 2 *Story Eq.*, §§ 1131a, 1257; 5 *Rich. Eq.*, 272; 1 *S. C.*, 398; 11 *Id.*, 407; 24 *Id.*, 184; 2 *Perry Trusts*, §§ 783, 777; *Speer Eq.*, 141; 2 *Pom. Eq. Jur.*, § 1065. The case of *Salinas* v. *Pearsall*, 24 S. C., 179, should be conclusive of this case. See 8 *Wheat.*, 469. The constitution of 1868 does not affect this case. *Pott. Dwarr.*, 654; 11 *S. C.*, 73; 3 *DeSaus.*, 417; 1 *Strob. Eq.*. 27. The contingent remaindermen were proper parties. 2 *Perry Trusts*, 881; 1 *S. C.*, 178; 8 *Rich. Eq.*, 269; 9 *Id.*, 184; 2 *Story Eq. Jur.*, §§ 843, 845; *Code*, § 138; *Mitf. Eq. Pl.*, 174: 1 *Dan. Ch. P. & P.*, 314; *Story Eq. Pl.*, 144–147. The statute of limitations is not a protection to defendant. This being an action for breach of trust, section 112, subd. 6, of the Code does not apply. 2 *Pom. Eq. Jur.*, 1079; *Pom. Rem.*, 101. If based on fraud, the evidence shows discovery of the fraud within six years.

*Mr. Henry N. Obear*, contra.

The contingent remaindermen were not proper parties. 25 *S. C.*, 162; 19 *Id.*, 336; 22 *Id.*, 330; 4 *Kent*, 267. Flenniken being a purchaser from a trustee who had the right and power to sell, the deed being in due form, and the purchaser not charged with fraud, his title cannot be impeached. This deed being made since 1868, the constitution of that year determines Mrs. Rabb's rights and status. 7 *S. C.*, 97; 15 *Id.*, 581; 16 *Id.*, 268; 17 *Id.*, 313. But she is estopped by her consent and acquiescence. 2 *Perry Trusts*, § 669; *Lewin Trusts*, 654; 3 *Pom. Eq. Jur.*, 26, 663; 3 *Swanst.*, 64; *L. R.*, 2 *Eq.*, 544. In *Salinas* v. *Pearsall*, the question of estoppel was not involved. Besides, the poverty of the family should induce the court to sustain a sale of the life interest for supplies. 5 *S. C.*, 448; 1 *Hill Ch.*, 334. The action is barred, for the evidence shows knowledge on her part of the breach of trust from its date. If Flenniken is held a trustee, he is only a constructive trustee, in whose favor the statute will run. 15 *S. C.*, 164.

September 28, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. In December, 1867, one Mary Regina Holley executed a deed, by which she conveyed certain lands situate in Fairfield County, of this State, to the defendant, Thomas W. Rabb, in trust for the sole, separate, and exclusive use of his wife, the plaintiff, Cassandra H. Rabb, during her life, not to be subject to the debts, contracts, and liabilities of her present or of any future husband, and, after her death, then in trust to deliver the same to such issue as she might leave living at the time of her death, to be held by them absolutely and discharged from all further trusts. In the 2nd clause of this deed, the trustee was authorized and empowered to make any and all changes of investment of the said trust estate for the benefit of said estate as he might think proper, after first obtaining the consent in writing of the said Cassandra, &c., and to hold the substituted property subject to the same trusts as provided in said original deed. Other similar deeds conveying other land were subsequently executed, all of which were duly recorded in said county. In February, 1877, the trustee having obtained in writing the consent of Cassandra, sold and conveyed to the defendant, Flenniken, some four hundred acres of the land, the deed being assented to in writing by the said Cassandra, and Flenniken entered into possession, who has since held possession.

In 1884, the action below was commenced by Cassandra and her children, alleging the insolvency of the trustee, the payment of the greater part of the purchase money by a note on the trustee due Flenniken, and the balance in bills of dry goods, groceries, and supplies furnished the said trustee from time to time by the said Flenniken, and also that Flenniken had full knowledge of the trust, and demanding judgment that the land be declared charged with the trusts originally imposed; that Flenniken be declared a trustee, and be required to account for the rents and profits since 20th day February, 1877 ; that he be enjoined from committing waste, &c., &c.

Upon testimony taken and reported by a referee appointed for that purpose, his honor, Judge Wallace, holding that the plaintiffs, Edward J., Mittie L., and Maud Rabb, being contingent remaindermen only, their interest being contingent upon their

surviving their mother, upon the authority of *Thomas* v. *Poole* (19 S. C., 336), and *Pearson* v. *Young*, decreed "that they were neither necessary or proper parties." He therefore declined to adjudicate anything as to their rights.

In so far as the plaintiff, Cassandra, was concerned, he decreed that the complaint be dismissed, and that the order heretofore made, impounding the rents and profits, be vacated. This decree was based on the ground that although a breach of trust had been committed, in the purchase money being paid by the individual note of the trustee held by the purchaser, and given up, yet the *cestui que trust*, Cassandra, having consented to and concurred therein, she was debarred from all claim for relief, citing 2 *Pom. Eq. Jur.*, 663; and *Witsell* v. *Charleston*, 7 S. C., 88.

The plaintiffs appealed upon the following exceptions: "1. For that his honor erred in holding that the consent of Cassandra H. Rabb was tantamount to an alienation, and that she could not recover. 2. For that his honor erred in holding that the consent of Cassandra H. Rabb could have the effect of destroying the trust. 3. For that his honor should have held that the said Cassandra H. Rabb could do no act which tended to the destruction of the trust. 4. For that his honor erred in holding that the plaintiffs, Edward Rabb, Mittie L. Rabb, and Maud Rabb, were neither necessary nor proper parties. 5. For that his honor erred in holding that contingent remaindermen cannot join with the life tenant in an action for the recovery of the estate in which they are interested. 6. For that his honor erred in holding plaintiffs' cause of action based upon fraud and collusion, whereas the said cause of action is based upon an ordinary breach of trust. 7. For that his honor should have held that the said Cassandra H. Rabb could have consented to a sale for reinvestment only. 8. For that his honor should have found that the sale here to the defendant, Flenniken, was in no wise for reinvestment, but was fraudulent and tainted with fraud, and in fraud of the trust and of the rights of the infant remaindermen, towards whom the said Cassandra H. Rabb herself stood in the relation of trustee."

Most of these exceptions seem to be based upon the effect of the decree more than upon any distinct ruling of his honor. For

instance, his honor said nothing as to the power of Cassandra H. Rabb to alienate the property in question, nor whether she could destroy the trust estate, nor whether the transaction was tainted with fraud, &c. He simply held that Cassandra having consented to the contract of sale in writing, and having approved and concurred in the conveyance, "she had thereby debarred herself of all claim for relief," notwithstanding there had been a breach of trust. His honor relied upon *Witsell* v. *Charleston*, 7 S. C., 88. In that case Alexander Fraser had, in 1854, by will bequeathed to the plaintiff $9,000, payable on the death of his wife, and "he directed that such legacy should be invested for the plaintiff's sole, separate, and exclusive benefit and behoof, and not be in any manner liable for her debts or for any debts and contracts of any husband she might marry." A portion of this legacy was invested in certain stocks issued by the city of Charleston, $2,500 of which, by the consent of the legatee, was pledged and assigned to one Hassell for supplies and advances furnished the legatee and her husband to make a crop.

The first question in the case was, whether the legacy, being an *equitable* interest, was subject to art. 14, sec. 8, of the Constitution, and the acts of assembly, upon the subject of the separate estates of married women, and the court held that there was no distinction between equitable and legal interests growing out of the mere fact that the one was equitable and the other legal, and that the section of the constitution, *supra*, applied equally to both, where there was no definite and distinct trusts imposed upon the equitable interest by the instrument creating the same. The question, however, whether, where the instrument creating the equitable interests imposed conditions and gave certain powers, which would be changed by applying the provisions of the constitution, *supra*, was passed by, the court saying: "That had the will imposed certain definite characteristics in the trust conformable to then existing laws, and after the purpose of the will had become executed by the creation of the contemplated trust, the constitution had been changed so as to tend to effect a change in the trust in these respects, an interesting question might have been presented affecting the constitution, and possibly of the law in such respect. The will, however, does not bear such a construction,

the only expressed objects of the trust assumed to have been intended, affect the rights of creditors of the plaintiff and her husband.   The powers of the *cestui que trust* over her beneficial interest are not limited or even named."   Such being the facts as to that case, the court held that the power of alienation existed as to the equitable interest of the plaintiff as fully as though it had been a legal interest under art. 14, sec. 8, of the Constitution.

But in the case now before the court, there is an express provision in the deed creating the trust estate as to the powers of the *cestui que trust* over said estate, and also of the trustee.   The trustee was authorized and empowered to make any and all changes of investment, &c., &c., after first obtaining the consent in writing of the said Cassandra, and to hold the substituted property subject to the same trusts as provided in the original deed.   This, it seems to us, was a limitation upon the power both of the trustee and the *cestui que trust*, which prevented a sale except for reinvestment, and which should prevent the application of the enlarged power conferred by the constitution, *supra*, adopted long after the trust estate was created, especially in a case like that before the court, where the rights of contingent remaindermen might be destroyed.   The grantor here evidently intended that the *corpus* of the estate should go to the remaindermen upon the death of Cassandra, and to that end, that no change should be made except for reinvestment, the substituted property to be held as the original.   To apply the provisions of the constitution so as to validate the sale herein would, it seems to us, be enlarging the powers of the *cestui que trust* beyond the terms of the deed creating the trust estate, and inconsistent therewith.  Nor do we think that this is required by the principles announced in *Witsell* v. *Charleston, supra.*

On the contrary, we think this case falls under the principle of *Salinas* v. *Pearsall* (24 S. C., 179), where this court declined to sustain a transaction somewhat similar to this—similar in the facts that the trustee had power to sell with the consent of the *cestui que trust* for reinvestment; that the sale was made with such written consent; that the purchaser knew of the trust, and that he paid the purchase money in a claim he held on the *cestui que trust* and her husband for supplies, &c., &c.   As to the

power of a trustee to sell the trust estate in violation of the terms of the trust deed, and the obligation of the purchaser who purchases with full knowledge of the character of the trust, see 2 *Story Eq.*, §§ 1131a, 1257; *Simons* v. *Banks*, 5 Rich. Eq., 272; *Mayer* v. *Mordecai*, 1 S. C., 389; 2 *Perry on Trusts*, §§ 783, 777; *Salinas* v. *Pearsall*, 24 S. C., 179. We do not think, under the facts of this case and the authorities cited above, that the plaintiff, Cassandra, was debarred of relief.

The only sale which the deed authorized was one for reinvestment; the defendant knew that the sale to him was not made for that purpose. He, therefore, participated in the breach of trust. In fact, it was through him that said breach was committed. We think the sale was void and should have been so held by his honor. The Circuit Judge having dismissed the complaint, made no ruling as to the liability of the defendant for rents and profits, nor on the claim of defendant for betterments, nor upon several other questions raised in the argument of counsel, outside of the exceptions. These questions are therefore not properly before us, and consequently we pass no judgment thereon.

Inasmuch as our conclusion will result in the protection of the rights of the contingent remaindermen, whoever they may be, the question whether the plaintiffs, other than Cassandra, were proper or necessary parties below, is more of an abstract question than otherwise, and therefore need not be absolutely determined. We may say, however, that as they are plaintiffs seeking an adjudication before any right has attached, his honor was right in declining to determine any matter as to them. They are prematurely before the court. See *Thomas* v. *Poole*, 19 S. C., 336, and *Pearson* v. *Young*, 25 *Id.*, 162.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, without prejudice to the defendant of asserting his rights, *if any*, to have the rents and profits of the land while he has been in possession applied to the payment of the debt of the trustee for supplies, &c., furnished, and the note extinguished in the purchase of the land, and also his claim, *if any*, for betterments. We, however, intimate no opinion as to defendant's rights in these matters.